Opinion for the Court filed by Circuit Judge D.H. GINSBURG.
 

 D.H. GINSBURG, Circuit Judge:
 

 Arkla Energy Resources (Arkla), a natural gas pipeline company operating in Arkansas and Louisiana, was formerly part of an integrated system that comprised both interstate pipelines and local distribution facilities. After a corporate restructuring left it as a separate interstate pipeline division of Arkla, Inc., Arkla applied to the Federal Energy Regulatory Commission to determine whether certain of its continuing arrangements with natural gas producers required certification under § 7 of the Natural Gas Act, 15 U.S.C. § 717f, and if so, for retroactive authorization. ARCO Oil and Gas Co., one of the producers, intervened before the agency.
 

 The Commission certificated Arkla’s activities, but also determined that ARCO must obtain a certificate in order to continue performing under the reserved gas clause of its contract with Arkla. Arkla Energy Resources, 47 F.E.R.C. 1161,342
 
 *1498
 
 (1989)
 
 [First Order], reh’g granted in part,
 
 50 F.E.R.C. II 61,243 (1990)
 
 [Rehearing Order].
 
 Upon ARCO’s petition for review, we find that the FERC did not adequately explain its assertion of jurisdiction over ARCO’s activities under the contract, and we remand the matter to the Commission for further illumination.
 

 I. BACKGROUND
 

 The natural gas that ARCO produces in the Magnolia and Village fields in Columbia County, Arkansas, is too impure, or “sour,” to be used as fuel without first being processed. ARCO sells this gas to Arkla, which processes and resells it. ARCO retains a right of “reservation,” however, by which Arkla agrees to redeliver, upon ARCO’s demand, processed gas for on-site use as fuel in the Magnolia and Village fields.
 

 The Commission held first that Arkla is involved in an “exchange” of gas with ARCO, and therefore, as an interstate pipeline, needs a certificate for the transaction.
 
 First Order,
 
 47 F.E.R.C. at 62,210. The Commission then reasoned that because Arkla has to obtain a certificate for its transportation of ARCO’s gas, ARCO, too, must obtain a certificate authorizing the exchange. “[W]hen a producer exchanges gas with an interstate pipeline [the exchange] is considered a jurisdictional activity and the producer is required to obtain certificate authorization.”
 
 Id.
 
 at 62,211.
 

 ARCO petitioned for rehearing or clarification, and the Commission issued a
 
 Rehearing Order,
 
 50 F.E.R.C. H 61,243, intended to clarify its position. On rehearing the. FERC did not change its tune, but it did add new lyrics:
 

 The term “exchange,” as it is used in the transaction before us, clearly does not refer to the sale or transfer of gas for value, but rather to the transportation necessary to effect the transfer. In this context, the term “exchange” always has and still does refer to the transportation of gas.
 

 Id.
 
 at 61,737. Although Arkla transports the gas, the FERC maintained that the “two parts [of the exchange] cannot be separated for regulatory purposes. This approach is required to assure that neither party can abandon service to the other without appropriate regulatory authorization.”
 
 Id.
 

 ARCO moved for further reconsideration, but the FERC did not respond. ARCO then petitioned this court for review of the FERC’s orders.
 

 II. Analysis
 

 This court must sustain any FERC order that is not “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.”
 
 Michigan Consolidated Gas Co. v. FERC,
 
 883 F.2d 117, 120 (D.C.Cir.1989) (quoting 5 U.S.C. § 706(2)(A)). We will vacate the order and remand the case, however, if the Commission “has failed to state a reasonable basis for its decision.”
 
 Transcontinental Gas Pipe Line Corp. v. FERC,
 
 907 F.2d 1211, 1212 (D.C.Cir.1990). This is such a case.
 

 ARCO argues that its side of the deal with Arkla is beyond the jurisdiction of the Commission. The producer points out that its delivery of sour gas from the wellhead to Arkla is a “first sale,” which the Natural Gas Policy Act exempts from regulation.
 
 See
 
 15 U.S.C. § 3331(a). Likewise, ARCO points out that Arkla’s redelivery of processed gas is a direct sale for end-use, so that it too lies outside the jurisdictional reach of the Commission.
 
 See
 
 15 U.S.C. § 717(b). ARCO insists that the FERC is trying to make nothing plus nothing equal something subject to Commission jurisdiction.
 

 The FERC provides scant justification or explanation for its assertion of jurisdiction. To support its regulation of what at least seems to be a first sale of deregulated gas, the FERC refers us to various cases in which it asserted jurisdiction over an exchange between a producer and an interstate pipeline.
 
 See
 
 Phillips 66 Natural Gas Co., 45 F.E.R.C. 11 61,211 (1988); Northern Natural Gas Co., 32 F.E.R.C. 1161,090 (1985); Northern Natural Gas Co., 29 F.E. R.C. 1161,117 (1984); Northern Natural Gas Co., 39 F.P.C. 821 (1968).
 

 
 *1499
 

 Phillips 66
 
 involved a producer that processed gas in a facility located at the crossing of two interstate pipelines. The facility was part of an interchange system through which both pipelines moved jurisdictional gas; thus the producer’s system was plainly a “jurisdictional transmission facility].” 45 F.E.R.C. at 61,622. Furthermore, the interconnection at issue in
 
 Phillips 66
 
 was but one of many delivery points within a three-way exchange of gas among the two pipelines and the producer. The precise nature of the exchange is unclear from the
 
 Phillips 66
 
 order; what facts do appear, however, suggest no analogy to the ARCO/Arkla arrangement.
 

 The
 
 Northern Natural Gas
 
 cases addressed a series of reciprocal transportation agreements. Under those arrangements, the producer moved some of its gas over the interstate pipeline to be resold downstream, and in exchange allowed the interstate pipeline to move some gas over the producer’s intrastate pipeline for resale at a connection with another pipeline. In each case the producer provided a transportation service, for which it received the provision of a like service in exchange. The producer did not, as does ARCO, merely deliver the gas that it produces to the pipeline and, after processing and transportation, retake some of the gas from the pipeline.
 

 Furthermore, in each of the four cited cases the producer applied for certification. The FERC consequently had no occasion to address the difference in jurisdictional status between a producer and an interstate pipeline.
 

 The FERC’s claimed need to regulate both sides of the ARCO/Arkla transaction clashes with its own assertion that it seeks to regulate only the transportation of gas on Arkla’s lines. Elsewhere, when the Commission has regulated both sides of an exchange in order to regulate the transportation aspect of the exchange, it has defined “transportation by exchange” as a device for moving gas belonging to two companies each of which has a gas supply that is cut off from its own but connected to the other company’s transportation facilities.
 
 See
 
 Tennessee Gas Pipeline Co., 23 F.E.R.C. ¶ 61,115 at 61,270 (1983) (finding no exchange),
 
 cited in First Order,
 
 47 F.E. R.C. at 61,737 n. 3. “An exchange makes possible a ‘movement’ of gas between two points which do not have connecting pipeline facilities.”
 
 Tennessee Gas,
 
 23 F.E. R.C. at 61,270. The net effect of the transaction in the present case, however, is simply to move gas within the Magnolia and Village fields. Arkla does not move its own gas over ARCO facilities, nor does ARCO deliver gas elsewhere on Arkla’s account.
 

 Because the FERC wants to regulate only the transportation of gas and not the transaction
 
 per se,
 
 it is unclear why it needs to regulate ARCO, which performs no transportation. The Commission does say that it cannot effectively regulate Ark-la’s transportation without regulating the performance of both parties to the contract, but it does not say why. In lieu of explanation the agency provides this baffling mixture of tautology and
 
 ipse dixit:
 

 Since the exchange arrangement hinges on the mutual benefits derived by the participants, each part of the exchange cannot be viewed as a separate transaction. Rather, each part of the exchange is dependant [sic] on the other in order for the transaction to be considered an exchange and to function as one. Thus, the exchange must be regulated as a whole and its two parts cannot be separated for regulatory purposes.
 

 Rehearing Order,
 
 50 F.E.R.C. at 61,737.
 

 Although it cites needless authority for the truism that an exchange provides mutual benefits to the parties, the agency fails to provide any support for its implicit premise that, because there are mutual benefits involved, its jurisdiction extends to any party involved in a contractual relationship with a jurisdictional pipeline. That proposition is too broad, of course, to be plausible, let alone valid. Under the FERC’s broad rationale, any (otherwise non-jurisdictional) end-user that purchases gas from a jurisdictional pipeline could be required to obtain a certificate from the Commission; every interstate shipment would subject the
 
 *1500
 
 shipper to federal certification and regulation. These transactions, too, “hinge[] on the mutual benefits derived by the participants.”
 

 Nor can the Commission’s assertion that “it is essential that both parts of an exchange be similarly regulated,”
 
 id.,
 
 withstand scrutiny. The FERC says that “[t]his approach is required to assure that neither party can abandon service to the other without appropriate regulatory authorization,”
 
 id.,
 
 but it is still not clear whom the agency thinks it is protecting. Arkla’s transportation is unquestionably regulated, so that ARCO is already protected against abandonment. Nor can regulating ARCO protect Arkla against abandonment. The FERC does not claim to be able to force ARCO to produce gas in order to fulfill a contract for a deregulated first sale, nor could the Commission force ARCO to take any reserved gas inasmuch as the contract imposes no such obligation. Thus, the FERC has failed to explain why it needs to certificate ARCO’s sale and receipt of gas in order to regulate Arkla’s transportation of that gas.
 

 III. Conclusion
 

 At first blush, the FERC’s assertion of jurisdiction appears to strain the meaning of jurisdictional interstate transportation, to no discernible purpose. Upon further reflection, however, it seems worse than useless, for it establishes a precedent for the imposition of an utterly superfluous regulatory burden upon any producer whose first-sale contract, otherwise beyond the FERC’s reach, contains the common clause reserving some volume of the sold and processed gas for redelivery and end-use in the production fields.
 

 Perhaps the FERC's decision proceeds innocently enough from the unexamined premise that it has always treated “exchanges” in a certain way. While an agency need not explain anew at every outing its policy for handling a recurring type of transaction, it must explain the fundamentally new decision to apply that policy to a transaction that does not fit the mold from which the policy was cast. The Commission’s conclusory statements cannot substitute for the reasoned explanation that is wanting in this decision and does not appear in the precedents that the FERC cites, which relate obliquely, at best, to the action taken here.
 

 The petition for review is accordingly granted and the matter remanded to the agency for further consideration.
 
 *
 

 So ordered.
 

 *
 

 ARCO also argues that the FERC’s decision in this case conflicts with its precedents in Southern Union Gathering Co., 15 F.E.R.C. ¶ 61,132 (1981) ("movement of gas” in exchange between pipeline and non-jurisdictional gatherer does not require certification of gatherer), and Willi-ston Basin Interstate Pipeline Co., 38 F.E.R.C. ¶ 61,133 (1987) (certificate granted to pipeline redelivering gas to producers; Commission silent regarding certification of producers). We are not convinced that ARCO raised this point with sufficient clarity before the agency, however.
 
 See, e.g., Office of the Consumers' Counsel, State of Ohio v. FERC,
 
 914 F.2d 290, 295 (D.C.Cir.1990). In view of our disposition here, and because the FERC should address the argument in the first instance, we decline to examine ARCO’s alternate ground for challenging the orders under review, leaving it to the agency to consider the point on remand.